[Cite as *State v. McGowan*, 2015-Ohio-3429.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO. 14 JE 37 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| FREDERICK McGOWAN, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:         Criminal Appeal from the Court of
                                  Common Pleas of Jefferson County,
                                  Ohio
                                  Case No. 13CR247

JUDGMENT:                         Affirmed.

APPEARANCES:

For Plaintiff-Appellee:            Atty. Jane M. Hanlin
                                   Prosecuting Attorney
                                   Jefferson County Justice Center
                                   16001 State Route 7
                                   Steubenville, Ohio 43952


For Defendant-Appellant:           Atty. Eric M. Reszke
                                   Suite 810, Sinclair Bldg.
                                   100 North 4th St.
                                   Steubenville, Ohio 43952


JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Mary DeGenaro

                                   Dated:  August 20, 2015

ROBB, J.


{¶1} Defendant-Appellant Frederick L. McGowan appeals his conviction and sentence entered in Jefferson County Common Pleas Court. Two issues are raised in this appeal. The first issue is whether the conviction for possession of drugs was against the manifest weight of the evidence. The second issue is whether the trial court erred in ordering an aggregate ten year sentence. For the reasons expressed below, the conviction and sentence are hereby affirmed.

Statement of the Facts

{¶2} On July 12, 2013, the Jefferson County Drug Task Force executed a search warrant on a suspected drug house at 809 Market Street, Toronto, Ohio. Tr. 105. The house became known to the Drug Task Force through Toronto Police Department's surveillance and a confidential informant. Tr. 102, 105. Two of the apartments in the house were rented by Nathaniel Richmond, an alleged member of the Chicago Boys, a local gang whose members are known for drug trafficking and violent crimes. Tr. 103-104.

{¶3} The officers entered the house through Apartment Number 1. There they found Appellant and a prostitute naked in the single bedroom apartment. Tr. 107. Appellant informed the officers which pants were his, brown pants size 44. Tr. 108, 165. Upon searching those pants, the officers found one rock of crack cocaine, one small bag of marijuana, and $520 in cash. Tr. 109, 218. Appellant admitted that the drugs and money found in the brown pants were his.

{¶4} In plain view on the kitchen table, a small amount of crack cocaine and crack pipe were found. The prostitute admitted these items were hers. Tr. 110. Appellant was paying the prostitute for her services with crack cocaine. She received the first amount prior to performing sexual services; the rock found in Appellant's pants was her final payment after services were performed. Tr. 112.

{¶5} Both Appellant and the prostitute were taken into custody.

{¶6} The officers continued the search of the residence. Tr. 112. In the living room closet, the officers found a black duffle bag. Tr. 117, 121. Inside the black duffle bag was a letter addressed to Appellant. Tr. 121-122. A pair of jeans

was also found in the closet. In the pocket of those jeans 8 bags of heroin and 27 bags of individually wrapped rocks of crack cocaine were found. Tr. 123, 125, 220. Each bag of heroin weighed about 10 grams, for a total weight of 74.8 grams. Tr. 125, 194. The jeans were labeled size 36. Tr. 165. They were sent to BCI to be tested for Appellant's DNA and it was later confirmed that a mixture of DNA was found on the jeans. Tr. 123, 211. The mixture of DNA included contributions from Appellant and at least one unknown individual. Tr. 211. Also found in the closet was a toothbrush that tested positive for Appellant's DNA. Tr. 128, 208.

**{¶7}** A black Samsung AT&T cell phone belonging to Appellant was found during the search. Tr. 135. Text messages on this phone that concerned the Drug Task Force Agents were from "Tilla." Tr. 136. The officer testified that the name "Tilla" is associated with a person named "Tracy McGowan," Appellant's cousin. Tr. 136-137. The officer testified that Tracy McGowan is a known member of the Chicago Boys, who was convicted of drug trafficking several times. Tr. 137. Tilla text messaged Appellant at 4:08 on July 12 stating, "U need to movie dat." Tr. 137. In response Appellant text messaged, "Ok." Tr. 137. At 4:11 Tilla again texted Appellant and asked, "Where u at?" Tr. 138. Fifteen minutes before the execution of the search warrant, Tilla texted Appellant, "Yo, u better move dat shit cuz." Tr. 138.

## Statement of the Case

**{¶8}** Based upon the above, Appellant was indicted for possession of heroin a violation of R.C. 2925.11(A)(C)(6)(e), a first-degree felony, and possession of cocaine a violation of R.C. 2925.11(A)(C)(4)(b), a fourth-degree felony. 12/18/13 Indictment.

**{¶9}** Appellant pled not guilty and the case proceeded to trial. Following testimony and presentation of evidence, the jury found Appellant guilty of both charges. 11/18/14 Verdict Judgments. Sentencing occurred immediately. The trial court sentenced Appellant to ten years for possession of heroin and one year for possession of cocaine. The trial court ordered the sentences to be served concurrently.

**{¶10}** Appellant timely appealed his conviction and sentence.

<u>First Assignment of Error</u>

"The jury verdict of guilty to the offenses of possession of drugs was against the manifest weight of the evidence."

**{¶11}** In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id.* In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial. *Id.* at 390.

**{¶12}** Although an appellate court can consider and weigh all of the evidence, only where the evidence weighs heavily against the conviction shall a new trial be ordered. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). The extraordinary relief of a new trial is limited because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts who sits in the best position to judge the weight of the evidence and the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *State v. Rouse*, 7th Dist. No. 04–BE–53, 2005–Ohio–6328, ¶ 49, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996). *See also Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

**{¶13}** Appellant was convicted of R.C. 2925.11 (A)(C)(4)(b) and (6)(e), which provides:

> (A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.
>
> * * *

(C) Whoever violates division (A) of this section is guilty of one of the following:

\* \* \*

(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:

\* \* \*

(b) If the amount of the drug involved equals or exceeds five grams but is less than ten grams of cocaine, possession of cocaine is a felony of the fourth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.

\* \* \*

(6) If the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of possession of heroin. The penalty for the offense shall be determined as follows:

\* \* \*

(e) If the amount of the drug involved equals or exceeds five hundred unit doses but is less than two thousand five hundred unit doses or equals or exceeds fifty grams but is less than two hundred fifty grams, possession of heroin is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree.

R.C. 2925.11.

**{¶14}** Appellant argues that the evidence fails to support the guilty verdict for possessing the drugs found in the blue jeans. He claims there was no evidence that he wore the jeans. He further asserts that there were other people with access to the jeans and to the apartment complex.

**{¶15}** Contrary to Appellant's assertion, there was testimony that could lead the jury to conclude Appellant was in possession of the crack cocaine and heroin found in the jeans. A review of the testimony supports this conclusion.

**{¶16}** Appellant admitted that the brown pants, and the one rock of crack cocaine and a bag of marijuana found in those pants, were his. However, he denied the crack cocaine and heroin found in the jeans were his.

**{¶17}** Testimony established that the crack cocaine in the brown pants was very similar to the crack cocaine found in the jeans. Officer Hanlin from the Drug Task Force explained that crack cocaine does not always look the same. He stated it will differ in size, in color, and in the packaging. Tr. 142. However, the crack Appellant was claiming to own and the crack found in the jeans were same in color and size. Exhibit 7 Photographs of Crack Cocaine; Tr. 143. Also, the packaging was the same. Tr. 142; Exhibit 17 Photographs of Crack Cocaine. Officer Hanlin explained that crack cocaine is typically stuffed in the corner of a sandwich bag with a knot tied tightly at the top. Tr. 142-143. The sandwich bags, in this case, were cut with scissors after the knot, which Officer Hanlin explained is not normal; instead, he testified that the sandwich bag is normally torn. Tr. 143.

**{¶18}** The similarities of the two crack exhibits did not stop at appearance and packaging. It extended to chemical content. The purity level of the crack found in the jeans as compared to the crack found in the brown pants was nearly identical. The purity level of the cocaine found in the jeans was 64.9 percent with 2.9 percent error. Tr. 148, 192; State's Exhibit 26. The purity level of the crack found in the brown pants, which Appellant admitted was his, was 64.6 percent with 2.9 percent error. Tr. 147, 191; State's Exhibit 25. A special agent with the Drug Enforcement Administration testified this level of purity was unusually high. Tr. 192-193. Given the color, size, and purity level, the special agent opined that the crack found in the jeans and the crack found in the brown pants were "in all likelihood * * * the same -- same cocaine." Tr. 193.

**{¶19}** We now turn our review to linking the crack in the jeans to possession of crack by Appellant. There was evidence that connected Appellant to the jeans.

{¶20} The jeans were found in a closet with other items owned by Appellant. For instance, a duffle bag with a letter addressed to Appellant and his toothbrush were found in the closet. Samuel Troyer, a DNA analyst from the Ohio Bureau of Criminal Investigation ("BCI"), tested the toothbrush for Appellant's DNA. The test indicated that the DNA on the toothbrush was consistent with Appellant's DNA; this DNA could be found in 1 in every 295 sextillion, 200 quintillion random individuals. Tr. 208-209; State's Exhibit 28.

{¶21} Appellant's DNA was also found on the jeans containing the drugs. Troyer testified that the jeans were tested at the waistband for DNA. Tr. 210. The sample taken from the jeans presented a profile mixture. Tr. 211. The mixture was consistent with contributions from Appellant and at least one unknown individual. Tr. 211. The analyst testified that he would expect 1 in every 618,800 individuals to be included in the mixture. Tr. 211; State's Exhibit 28. Troyer admitted, on cross-examination, that Appellant's DNA could have gotten on the jeans by picking them up and folding them, and not by wearing them. Tr. 214.

{¶22} Appellant's counsel focused on the size difference between the brown pants and the jeans insinuating, given the difference, the jeans could not belong to Appellant. The jeans were a size 36; the brown pants were a size 44. Officer Hanlin testified that when the jeans and the brown pants were held up and compared there was little size difference; he opined that the brown pants did not appear to be six inches bigger than the jeans. Tr. 165. Furthermore, both the jeans and the brown pants were admitted into evidence; the jury was able to compare the size. Even more compelling, the jury actually got to see Appellant in the jeans to determine if they fit. Tr. 227-228. Appellant put on the jeans and lifted his shirt up so the jury could see. Tr. 228. He also bent over and squatted so the jury could see if the jeans fit. Tr. 228-229.

{¶23} Cellular phone text messages also linked the crack and heroin that were found in the jeans to Appellant. Those text messages were from Appellant's cousin, Tracy McGowan, who goes by the name "Tilla." Tilla is a known member of the Chicago Boys gang, and has been investigated and convicted of drug trafficking

several times. Tr. 136-137.  Tilla sent Appellant two text messages on July 12 stating, "U need to movie dat," and "Yo, u better move dat shit cuz."  Tr. 137-138; State's Exhibit 16. The last text message occurred about fifteen minutes before the execution of the search warrant.  Tr. 138. The jury could reasonably conclude the texts were advising Appellant to get the crack and heroin out of the apartment because a search for it might occur.

**{¶24}** On cross-examination, Officer Hanlin admitted it was possible that the text messages where telling Appellant to get rid of the drugs he admitted to having in his brown pants, not the crack and heroin found in the jeans.  Tr. 173.  While this may be a possible conclusion, it was not the conclusion reached by the jury.

**{¶25}** The jury was in the best position to determine whether or not Appellant possessed the crack and heroin found in the jeans.  Considering all the evidence, and the fact that the jury got to see Appellant in the jeans, we conclude the trier of fact did not clearly lose its way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  *State v. McKnight*, 107 Ohio St.3d 101, 2005–Ohio–6046, 837 N.E.2d 315, ¶ 71.

**{¶26}** This court is not persuaded by Appellant's arguments.  This assignment of error is meritless.

<u>Second Assignment of Error</u>

"The trial court committed reversible error in sentencing the defendant to ten (10) years in prison."

**{¶27}** Appellant argues that the trial court failed to consider factors which weighed against this crime being more serious than conduct normally constituting the offense, and factors which supported the conclusion that recidivism was not likely. Specifically, he asserts the trial court did not favorably weigh the facts that: he had no prior delinquency adjudications; the possession of heroin was 74.8 grams and was not near the threshold of 250 grams that apply under the Major Drug Offender statute; he was on worker's compensation at the time of the offense; his part in the drug trafficking enterprise was limited due to his short residency period in Jefferson

County; and, no firearm or weapon was found on his person or in the apartment when the search warrant was executed.

**{¶28}** This court is currently split as to the standard to apply in felony sentencing cases. *State v. Stillabower*, 7th Dist. No. 14 BE 24, 2015-Ohio-2001, ¶ 8-11, citing *State v. Hill*, 7th Dist. No. 13 MA 1, 2014–Ohio–919 (Vukovich, J., Donofrio, J., majority with DeGenaro, J., concurring in judgment only with concurring in judgment only opinion) and *State v. Wellington*, 7th Dist. No. 14 MA 115, 2015–Ohio–1359 (Robb, J., DeGenaro, J., majority with Donofrio, J. concurring in judgment only with concurring in judgment only opinion).

**{¶29}** One approach, as applied in *Hill*, is to apply the test set out in the plurality opinion in *State v. Kalish*, 120 Ohio St.3d 23, 2008–Ohio–4912, 896 N.E.2d 124, ¶ 26. *Kalish* provides a two part test. First, it is determined whether the sentence is clearly and convincingly contrary to law. *Id.* at ¶ 13–14. Second, the court's discretion in selecting the sentence within the permissible statutory range is reviewed for an abuse of discretion. *Id.* at ¶ 17.

**{¶30}** The other approach, as applied in *Wellington*, is to strictly follow R.C. 2953.08(G), which provides appellate courts are only to review felony sentences to determine if they are contrary to law. R.C. 2953.08(G) specifically indicates the appellate court's standard for review for felony sentencing is not whether the sentencing court abused its discretion.

**{¶31}** As we mentioned in *Stillabower*, a certified question concerning what felony sentencing standard of review applies is pending before the Ohio Supreme Court. *Stillabower*, 2015-Ohio-2001 at ¶ 11, citing *State v. Marcum*, 141 Ohio St.3d 1453, 2015–Ohio–239, 23 N.E.3d 1453.

**{¶32}** Regardless of which test we apply, the sentence is upheld.

**{¶33}** The ten year sentence for possession of heroin, a first-degree felony, is within the applicable range set forth in R.C. 2929.14(A)(1). Likewise, the one year sentence for possession of crack cocaine, a fourth-degree felony, is within the applicable range set forth in R.C. 2929.14(A)(4).

{¶34} In the judgment entry, the trial court indicated that it considered R.C. 2929.11, the purposes and principles of sentencing, and balanced the seriousness and recidivism factors under R.C. 2929.12. 11/26/14 J.E. At the sentencing hearing, the trial court did not specifically mention R.C. 2929.11 or 2929.12. However, although the trial court is required to consider both R.C. 2929.11 and 2929.12 when considering the appropriate sentence, the court is not required to mention the statutes at the sentencing hearing. *State v. Mathis*, 109 Ohio St.3d 54, 2006–Ohio–855, 846 N.E.2d 1, ¶ 38 (required to consider the R.C. 2929.11 and 2929.12); *State v. White*, 7th Dist. No. 13 JE 33, 2014-Ohio-4153, ¶ 9.

{¶35} The record before us indicates the trial court considered both statutes. Appellant's arguments pertain to the balancing of the seriousness and recidivism factors enumerated in R.C. 2929.12. The trial court considered these factors.

{¶36} The trial court noted Appellant was convicted of possession of cocaine with the intent to distribute in 1996, along with other charges, and was sentenced to 14 years. Tr. 268, 273. Appellant was released, violated his parole, and returned to prison for two years in 2010. Tr. 269, 274. When the offense before us occurred, he was on parole. Tr. 278. This information relates to recidivism and indicates Appellant is more likely to commit future crimes. R.C. 2929.12(D)(1)-(3). Although Appellant was not adjudicated a delinquent nor committed an offense as a juvenile, his adult offenses are pertinent and recent.

{¶37} In weighing the seriousness of the crime, the trial court considered the facts of the crime. R.C. 2929.12(B), (C). Appellant was convicted of bringing two separate types of drugs into the county; the drugs were going to be sold from a drug house. Tr. 269-270, 278-279. Although the testimony indicated that Appellant resided in Jefferson County a short period of time, that short period of residency does not mitigate the fact that drugs were brought into the county to be sold. The amount of heroin was 70 grams, which is in between the 50 to 250 grams that constitute a first-degree felony. Tr. 269; R.C. 2925.11(C)(6)(e). While this amount is closer to 50 grams rather than 250 grams, sentences are not required to be based upon a

mathematical ratio. Instead, trial courts weigh the factors and determine the appropriate sentence.

**{¶38}** The trial court knew Appellant was on worker's compensation when the offense was committed. Tr. 272. The trial court also knew Appellant did not have a firearm on his person at the time of arrest. Tr. 283. Those facts did not persuade the court that a lesser sentence should be imposed. In fact, the trial court indicated if Appellant had a weapon at the time of arrest, then it would have sentenced him to a longer term. Tr. 283.

**{¶39}** Reviewing all the information considered by the trial court, we hold the trial court did not commit error in its sentence of this Appellant. This assignment of error is overruled.

<u>Conclusion</u>

**{¶40}** Both assignments of error are without merit. The conviction and sentence are hereby affirmed.

Donofrio, P.J., concurs.

DeGenaro, J. concurs.